May it please the court. My name is Fred Watson and I represent Richard and Teresa Pressl, who are the appellants in this case and who are the plaintiffs below. Mr. and Mrs. Pressl live on the shores of Smith Mountain Lake, which is located in Franklin County, Virginia. And in fact, their property extends out beyond the shoreline and into the waters of Smith Mountain Lake. Smith Mountain Lake was created in the 1960s as part of a hydroelectric project. It was created as a result of the damming of the Roanoke River, which was a navigable waterway. And the lake is part of the Smith Mountain Pump Storage Project, which is operated and maintained by Appalachian Power Company, who is the appellee in this case and who is the defendant below. Mr. and Mrs. Pressl, in order to enhance their enjoyment of their property, want to build a dock. That dock will be completely on their own property, but it would extend into the lake. But remember, their property also extends into the lake. Appalachian Power Company asserts that it has the authority to either admit or deny permission to the Pressls with regard to the building of their dock. And they further assert that if they grant permission, they also have the authority to attach terms and conditions to that grant of permission. The issues in this appeal are whether Appalachian has the authority it has asserted. And it seems to me more importantly, whether that issue gives rise to federal question jurisdiction. Why should a Virginia state court construe the property rights of the state? That is our argument, Your Honor. Yes, Your Honor. We're arguing against federal jurisdiction. This was a flowage easement deed entered into in the 1960s between private parties. It's a private contract right. And as this court said in the first Columbia Gas versus Drain case, the allocation of property rights is a paradigmatic question of state law. And state courts are the most appropriate to deal with those issues. How would that interfere with FERC licensing? It doesn't interfere with FERC licensing. The entire FERC program is predicated on the acquisition of private property rights by the FERC licensee. And they can acquire those primarily through private contracts, such as they did in this case. There's a flowage easement. They can also acquire them if they can't get them through private property rights through eminent domain. This is not an eminent domain. Excuse me, can I ask you, do the terms of the flowage easement allow the power company to take down the dock? No, it does not, Your Honor. It does at their discretion. I apologize. Indeed. They are granted two rights, one of which is to take down structures below the 800-foot contour at their discretion. And they may have the right to take down the dock. We would argue in the circuit court of Franklin County, if we were there, that substantively discretion isn't absolute. It cannot be arbitrary and capricious. And so, therefore, there would have to be some reasonableness to their actions in taking down the dock. We don't think that they just have an absolute right to do that. Now... Is there anything that would keep them from just condemning the property taken through eminent domain if they really got mad at you? I'm just curious. It's irrelevant to the matter. Oh, no, no. I think that's an important question. I think if it is found that they have not acquired sufficient property rights to comply with FER, then they could exercise eminent domain in order to acquire those rights. And if they do have sufficient property rights to comply with FER? I'm sorry, Your Honor? If they do have sufficient property rights, and in their judgment, it requires that there be not the dock that your clients have put up, they could take the dock down if they have those property rights, right? If they have that property right and their actions are not arbitrary and capricious, then... No. If you have a right and you execute the right, I mean, we're not in state court, but it seems to me if you have a contract right, you don't go additionally looking and seeing if the contract is arbitrary and capricious because the two parties agreed. Well, what the parties agreed is that Appalachian could, at its discretion. Indeed, that sounds like discretion. That doesn't sound like... Okay, go ahead. Well, I... It sounds like it's within their discretion, not within your client's discretion. That's exactly right. But I think that implicit in the exercise of discretion is that it not be exercised arbitrarily and capricious. And so that would be our argument. If there was no reason for it. That's right. That's right. If there were no reason for it except spite or a show of force or something, then that would be arbitrary and capricious. Okay. What Appalachian is arguing... Go back to the... There are two sets, two sets of rights that they are getting. And we've talked about one, the right to come onto the property whether they can do it absolutely or at their discretion to cut down structures, to destroy structures below the 800-foot contour. And it's important to note that the press's property extends above the 800-foot contour and below it. The other right that they're given is the right to overflow. And I think this is important, the language. With the court's indulgence, I'd like to quote it. It's, quote, the right to overflow and or affect so much of said premises as may be overflowed and or affected continuously and from time to time in any manner whatsoever as the result of the construction, existence, operation, and or maintenance of the aforesaid dam and or the levels of the impounding waters by reason of the operations of said power station. Now, what Appalachian is arguing is that the term... Well, I would say that these are clear and unambiguous rights that have been conveyed to Appalachian by the press's predecessor in time. And because they're clear and ambiguous, there's no need to consult with the extrinsic evidence. In fact, in the Virginia contract law, parole evidence would prohibit that. But what Appalachian is arguing is that its extrinsic evidence needs to be consulted to construe this parole adjustment. And the extrinsic evidence that they refer to is their license, their shoreline management plan. And they make that argument without calling it parole evidence and without arguing in any sense that the language of the flow adjustment is in any way ambiguous. So, it's an attempt to use parole evidence without making a parole evidence argument. Now, what Appalachian is arguing is that the term effect and that right to overflow in effect, that the term effect conveys them a broad regulatory authority, basically an unchecked unlimited authority. And that argument is contrary to at least three basic principles of contract construction. The first is the primary goal in constructing a contract is what would the party's intent at the time it entered the contract. If we accept Appalachian's argument as to the term effect, we're incorporating into this agreement terms and conditions that were not in the contract. And there's no reasonable way to think that the party's intended at the time they made the contract to incorporate things that were not created for years. The other principle of contract construction that their argument violates is the principle of ejusdem generis. And that contract principle, when general words are enumerated with specific words, the general words are construed to include only things similar in nature to the specific word. Now, on page seven of their brief, I think this is important, in characterizing that right to overflow in effect, not even characterizing, quoting it, Appalachian quotes the right that was conveyed to them as follows. It says the deed grants actually the right to, quote, affect so much of the property. They omit the part that says overflow and or effect. And I think that omission is critical. And I think the language that was omitted is critical to understanding and giving meaning to the word effect. Effect is a general word. It follows a specific word, overflow. So the word effect is limited and informed by the word overflow. In fact, in the Virginia Supreme Court case, Brown versus Haley, the Supreme Court characterized this language, they paraphrased it as to overflow effect by water. That is consistent with this principle of contract construction. What Appalachian is arguing is that the term effect creates something much greater than the word overflow. And the third principle of contract construction that Appalachian argument violates is that contract should not be interpreted in a way that would render parts of the contract superfluous. And if we accept Appalachian's argument that the term effect gives it this broad regulatory authority, that it makes superfluous the right that we talked about earlier to come onto the property and destroy or remove docks or other structures. If the term effect gave them such a broad regulatory authority that effect means they can do anything to the property, then this language is not required. It also makes superfluous the reservation of rights that the original grantors, the rights that they've retained, and what the Floyd's deed easement says is that the grantors reserve the rights to, quote, possess and use said premises in any manner not inconsistent with the estate rights of privilege here in Granite. And if we accept the word effect has such broad meaning that Appalachian could do anything, they reserve nothing. Then that language is also superfluous. There's simply nothing in the Fressel's complaint or the Floyd's easement that necessitates any reference to or interpretation of Appalachian's license, the license that was issued by FERC, or regulations of FERC. And in fact, it's instructive to see what FERC thinks about this issue. And in their brief on page 11, half those sites do a complaint with regards to Mount and Lake filed by a public interest group called Cut Unnecessary Regulatory Burden. The order that was generated as a result of that complaint is instructive. Besides saying that disputes over property rights were not the province of FERC, FERC says they need to be handled by courts of appropriate jurisdiction. They also said, and I think this language is important and I'm going to quote it. This is from a 2015 FERC order. It says standard license article 5 requires a licensee to acquire and retain the property interests necessary to carry out project operations. These may be obtained through an easement, fee title, leases, or other types of conveyances or if necessary by federal eminent domain pursuant to section 21 of the federal power act. And here's where the language is important. FERC goes on to say the instruments of conveyance define the extent of the licensee's rights. In our case, the instrument of conveyance is the Phloeges Medivh. The Phloeges Medivh, according to FERC, defines the extent of Appalachian's rights. FERC goes on to say therefore neither the commission nor a licensee or transferee can interfere with the transferor's retained rights. Rights retained in this case by the Prestles through their predecessor and entrants. The inclusions of, and this is important, the inclusions of lands within a project boundary will not restrict landowners' uses since inclusion of lands within a boundary does not itself create or alter property rights. The commission's inclusion of the standard land use articles, the approval and adoption of a shoreline management plan, or the approval of a project map will not affect the property interest obtained. In other words, not only is reference to APTO's license not necessary, according to FERC it's not even appropriate. According to FERC, the license doesn't affect the property interest obtained by the easement. The easement in and of itself defines the property rights. Thank you. Wait, wait, wait. I want to ask you an irrelevant question just out of curiosity. My favorite kind. Is the dock you're contemplating the kind that you drive pilings into the lake bed to support or are you talking about a floating dock? I believe it's one that's going to involve the driving of pilings. Okay. I'm just curious. I think that's right. Okay. May it please the court, I'm Frank Friedman representing Appalachian Power Company. Matt Pritz is with me at counsel's table and we've reserved five minutes for Mr. Pritz. He is involved in APCO's legal work within the project and can best address technical nuts and bolts aspects of docks and shoreline property. This case involves the Prestle's desired construction of a dock and dredging in the back of a narrow shallow cove within the boundaries of a federal hydroelectric project. The Prestle's say there is no federal issue here without mentioning that FERC itself has rejected this very dock in a wetlands area previously. In allowing construction on the shoreline and dredging at the back of a shallow cove, APCO has to follow, whether it allows it or not, it has to follow its federal license with part of its federal license. And in doing this, APCO has to balance a lot of factors that FERC as a federal administrative agency has put together for the benefit of everyone. But the question is not, as I understand it, what's being challenged is not whether or not you have the authority. The question is whether or not the easement gives you the authority. And there's no dispute about, you know, what obligations are required between APCO and FERC. Well, the easement does give the authority. And one reason, and I'll turn to that in just a second, one reason that the federal project and the federal program is important, you know, it's not just do you have a dock? It's things that in the shoreline management plan, we have to consider habitat management, aquatic vegetation. That's right. But those are factors that would determine whether it's a good idea or a bad idea to have a dock. That's correct. The challenge is, do you even have the right to make the decision, which is, as they argue, dependent on the construction of the easement? Well, what I would say to that is this. In a case where the question is, did you get title? You have wrong title. Some imposter showed up and you don't have any title at all. You botched the easement. That's a state court question. Okay. That's one example. Because it has nothing to do with federal law. But if you don't have property rights and they go to Virginia court and they get a decree that says that you might, what your limited is, is to go back to FERC to amend your license or to condemn the property. Well, the big if there is, if we don't have the property rights. And that's what the state court, if you do have the property rights, the state court says that Well, okay. The property rights that we have here are, as I think the court has already covered, extensive. They cannot build a dock under these rights. They're making a big fuss out of effect. It does say overflow and or effect. Or means effect doesn't mean the same thing as overflow. And we can affect it, not just a little, but in any manner whatsoever. Then they can't build a dock. We have the right, among other things, to enter upon the property at any time at ACCO's discretion to cut, burn, and remove there from any and all building structures or improvements below the 800-foot area. And why is that? There's a federal question. There is a federal question. Right. And what is it? Well, a case arises under federal law where the vindication of a right under state law necessarily turns on some construction of federal law. And here there are questions of federal law as to whether or not they can get their dock, whether or not they can get their permit. Because, in fact, they pled it. They pled federal issues in the complaint. What their declaration says is, and I quote, that they'd be allowed to use their property in any manner not inconsistent with the maintenance of a dam and hydroelectric power generation plant operated by APCO. Now they're trying to say, well, that doesn't really mean the whole project. But at page 21 of their complaint, they admitted they're talking about the whole project. This project isn't just the power plant. It's the waters. It's the impounded waters, which are also quoted. They left that out when they were talking about the effect language. The impounded waters are part of the project. And the project boundary is 25,600 acres. That's a J265 and 300 and 301. And if we don't comply with our license, then we lose our license. Part of our license is to enforce docks. Now what I was trying to say earlier. But your right to enforce it is dependent on the easement. It is dependent. Well, that's, if we have an easement from the wrong person, that's true. But if we have the power to take out the dock here, which we unquestionably do, then the question is, you know, on the one hand, they've raised it themselves. They don't want, they say, tell us. No, but you finish your sentence though. But the question is what? The question is, does our decision on whether or not to knock out the dock depend on federal law? No, not the question to knock out the dock, the question to authorize or deny construction of the completed dock. We're talking about the ability and right to build one. Well, the right to permit it also, part of the license, the federal license, what the federal government is trying to do here, let's, you know, earlier I was trying to say in essence, that it's a good thing that there is uniform regulatory administration. It's like the jurisdictions here and all of them have multiple judges. If you go to state court and they all say, yeah, have the biggest dock you want, dredge all you want, maybe there are problems. Maybe there's a lack of uniformity. Maybe all the fish died. Maybe nobody can vote. But see, the problem is there are lots of times when it might be a good idea to be in federal court, but you know, federal jurisdiction is confined. Correct. So we have to have a basis for federal jurisdiction. And if all it's being argued about is the license. Well, it's the Federal Power Act, the license, but it's the easement as well. Do you think that any license would be, okay. I mean, the Federal Power Act incorporates the license, incorporates. So then you are saying that your dispute as to any license would be, would give rise to federal court jurisdiction. Well, I'm saying that in this case, the Federal Power Act and the license and the shoreline management plan are orders of a federal agency. FER gives them to us. You comply with those or you lose your license and they are orders of a federal agency. I'll sort of flip here to 16 USC 825P. It says that as Congress has mandated exclusive jurisdiction of suits brought to enforce any duty created by or to enjoin any violation of any order under the Federal Power Act and a number of other acts. This is a suit or it would be the coercive action would be to enjoin them from violating an order. The FERP order, the license that says, hey, you can't build in this wetlands. Okay. And there is an existing one and I'll get to that in a minute. There are actually two existing FERP orders that say, you can't do this. It's a terrible idea. I'll skip to that. In fact, I mean, obviously our briefs talk about the gun and grable factors and I will highlight in grable, which this case is like a lot as far as it was a tax case, but what it said is the need for uniform, consistent administrative outcomes is a very substantial federal interest. Same here. And I might add the state in this case, if you look at Virginia code 15.2-1226, which is a JA 373, even the state has a statute that says counties, you can draft ordinances on this, but they cannot interfere with the rights and responsibilities APCO has under its federal license. Because APCO, we don't want chaos. We want a consistent, uniform system here. So that's what we have. Now, the irony here is that APCO was working with the Pressles, trying to assist them in meeting shoreline management requirements, when the Pressles suddenly decided federal law couldn't control them. APCO had tried to help the Pressle family and you can see at JA 363-71, correspondence, based on the problems the previous owners of this property faced. FERC previously rejected the Fry's, their predecessors, dock construction on this same property in this same code, because it is in a very shallow area adjacent to wetlands. And the rules here are particularly tight in wetlands. There are 500 miles of shore here. There are three percent of it is in the protected resource. They say, oh, it's not really wetlands. Look at JA 48. It's their own dock draft. It shows they're building right over wetlands. Let me interrupt you just a second, Freeman. I'm going to get you to switch gears a little bit. How would you distinguish the drain case from this situation? The drain case is like my other hypothetical, which was that you just don't have title. The drain case was, you know, you don't have title, period. You got it from the wrong person. It has nothing to do with the rights to enforce the easement. And, well, I'll come back to their, the only argument they make about how they have rights in this property is that it's, since it's a cross, since they have the right to cross, somehow they have the right to build the dock. And that is not correct under the flow achievement. And that's what they briefed. They have an argument here today, and the district court below really rejected it. As to drain, like the hypothetical, all you had there was the question is how wide is the easement? How wide is it? Factual question. Battle of experts. There is nothing federal there. But here, there's a lot federal, and the best example I can give you is J71 to 75. FERC issued a stern order saying you can't build here without significant rehabilitative efforts. They don't mention that. But nonetheless, the press plan to build a dock on the same unfinished piling, says Mr. Fry, which was issued previously, raised the same issue of dredging around the shallow coast like Mr. Fry. It's in two feet of water, JA72 and 75. It's adjacent to wetlands. What's the purpose of the dock if the water's so shallow? They want a dock. It's in two feet of water to 3.7 feet of water. That's a JA, I believe, 72. They plan to put a walkway over the wetlands. You can see it on their own draft. They say, no, we don't. Well, it's a JA48. It's their own draft, a survey. That's their own drawing. And you can see what they're trying to do is exactly the same as what Mr. Fry had. We compare those two things at JA343. And the truth is theirs is, we believe, slightly bigger if you look at the numbers, length of the dock on pages 359 and 361. The point is FERC has already issued two orders denying a request for a variance, which would have given AFCO permission to allow Fry to construct a dock and dredge on this same spot, JA71 and 75. And the reasons are proximity of the dock to the wetlands and insufficient vegetative buffer between property and wetlands. So we were working with them. We were genuinely trying to help them. We're still willing to work with them and help them get their dock. We were sending them hints on what they needed to do. Instead, they abruptly went to a state court and now they're asking for rulings which directly undermine existing FERC orders. Can they construct a dock on the very same pylons? They're still there. They're Mr. Fry's pylons. FERC has said no. Can they dredge here where it's so shallow? FERC has said no, not without significant restorative efforts. And that's why AFCO was trying to help them. They were telling them, maybe if you move the dock out a little bit, we can work with FERC. Maybe if you do some vegetative work, mix up the vegetation, again, this is 363 to 371, it will pass the important license that's there to save the like the wetlands and conservation and scenic and recreational values is what the statute says. Under Opwell and Lever, you can't in-drawn an existing FERC order by just changing parties or changing courtrooms. So the district court got this case 100% right under the coercive action doctrine, under their pleading, which specifically pleads federal issues. They want all the rights subject to what they can do under the motion, I mean, under the license. And federal jurisdiction is not only playing on the face of the complaint, but the case focuses on federal law. And the Pressles, having already started the process, absolutely have not exhausted their administrative remedies. They say they don't even want to try to get a permit. If everybody puts up the dock they want, the lake is ruined. They haven't exhausted their remedies. In fact, they intentionally sidestepped them. I'm going to hand over to Mr. Prince. Thank you very much. Thank you. May it please the court, I'm Matt Prince. Let me try to answer one of your questions earlier if Mr. Freedman's answer didn't. Mr. Watson stood up here and said, to your question, can they take out any dock? And he said, yeah, as long as they don't do it in an arbitrary and capricious way. He's requesting them to make sure the dock meets certain conditions and things. Arbitrary and capricious. Okay. Well, how does APCO decide what they're going to allow him to have with his dock? Well, it's based on the license. The license says APCO. But he's saying, you can't even require me to do anything because the easement doesn't give you the power. Yeah, and what their argument is. So the argument's not about whether it's a good idea or a bad idea. You're right, he's wrong. No, I see. Well, and you know what that argument is? That argument is, and it was Judge Moon, this is the second time he had heard this last year. Okay, he had heard it in an earlier case brought by another guy. And they got the advice that the language in the easement that says you have a right to cross the land, right to cross the land to reach the water for recreational purposes. They were told right to cross means you can build whatever you want. A right to cross equals a right to build. Even though the easement says APCO can remove any structure at any time at its discretion. They said a right to cross is a right to build. Judge Moon said nonsense. That's not right. Look at JA111. That's where Judge Moon is in our case. He's referring, he says, I've already decided this issue in the Nissen case. That's the other case he was looking at. It's a ridiculous argument that a right to cross gives you a right to build. It's just a right to cross. But isn't that the argument on the merits? I mean, isn't this exactly the argument that you would be making to the state court if we should find no federal jurisdiction? It is an argument on the merits. And it's our position, the state court is not the right court for this case. And that's where I was getting to. They're saying arbitrary and capricious. So the state court is going to have to decide whether we're being arbitrary and capricious. No, that's not what he said. He said arbitrary and capricious was an argument he would make later on if an effort was made to take the dock down. He's not saying the issue here is arbitrary and capricious. Well, the issue is what are we allowed to allow within the project boundaries? What type of use of the shoreline are we allowed to use? And that comes from the license. And Judge Turk, in a case that was here in 2006, Judge Turk said, the meaning of a federal license is a substantial and important issue of federal law. It sensibly belongs in a federal court. The federal government has an ob concern in maintaining control over the engineering, economic, and financial soundness. There have been a number of cases that have gone to federal court. Judge Urbanski, Judge Moon, Judge Turk, they've all taken these cases. There's the tri-dam cases we've cited. There's the Union Electric versus Devine case. There's a number of cases from across the country, not just Appalachian cases, that when it's a question of occupancy and use of the land with an easement here that brings in the license, the easement brings in the license, by the effect in any manner necessary to operate it, it's a federal question. So it's not you have a dispute as to a license. Yeah, it's a dispute as a federal question. The meaning of a federal license is a substantial issue of federal law. It's, yes, Your Honor, when we've cited in our briefs the cases that say an interpretation of a license... A lot of those cases are district court cases, and a lot of them are unpublished. Well, and the Union Electric cases was affirmed by the district court level. This case came up to this court, and this court affirmed it. Now, if there was no jurisdiction, this court had the independent duty to kick that case out. But no, this court confirmed that case, and that was in 2006. And they'll try to distinguish that case, and they'll say, well, that easement specifically incorporated the terms of the license. Well, the language in this easement still brings in the language of the license, because you have the ability to affect the property in any manner necessary to operate the project. And they've pled in their complaint. We want a declaration. We can do anything here on our property that doesn't interfere with their ability to operate the project, which requires, as Judge Moon said, it requires you to look at the license. What does AFCO have to do to operate the project? And that's what brings in the thing, it is a federal question. There are a number of cases that stand for that proposition. What about his argument that you had this overboard easement years ago, and the things that you're trying to impose now, that's not what they agreed to? Well, I would say what they agreed to in 1960 is, you're going to flood my property, you're going to flood my property, you're going to affect my property, and whatever you need to do to operate and maintain the project. And that's in 1960. And, you know, the types of docks people build in 1960 are a little different than now. But that doesn't mean that they didn't agree up front, the intent of the parties was, you can do to my property, and this is not the whole property, it's just the portion below the 800 foot elevation, you can do whatever you need to do to operate the project, and you can affect that property and whatever you need to do. And over the years, that may change a little bit. But that doesn't mean that it is a improper imposition of burden on him, because it's the same. So we would submit there is federal jurisdiction here. If I can direct right up the street here, they pass a law 15.2 1226. And it's a statute, it's cited in our brief, it's 373. This says, the governing bodies of the counties around the lake can ordinate, by ordinance, regulate the land of the counties concerning the location, size, and length of docks. But those ordinances shall not conflict with the rights and responsibilities accorded Appalachian Power Company under its federal license. Up the street here, they understand the counties, the state, you've got to take a back seat to act those rights and responsibilities under the federal license to operate the Smith County project. The statute is JA 373. I think it's an extraordinary statute, and it shows that the state is not, it's not a question for state. When it comes to the rights and responsibilities under the federal license to operate the project, where these docks are, how big they can be, that's something that the state needs to step back on, and that it's a federal question. It is. Thank you very much. Your Honor, we've heard a lot about their federal license. And because APCO is federally licensed under the Federal Power Act, there is this federal flavor lurking in the background of this case. However, this court explained recently in the Flying Pigs case, and explained earlier in the case, merely having a federal issue lurking in the background of the case does not make that claim into one arising under federal jurisdiction. And that's exactly what we have in this case. There's nothing in the license that confers to Appalachian any authority whatsoever. They point it to nothing in the license that confers any authority to them over individuals' private property rights. They point it to nothing in the Federal Power Act. No, no, no, no, no, no, no, no. Just a minute. Do we have to accept that argument for you to win this federal jurisdiction claim? No, you don't. Well, then I won't know why you're making it. Then I'll stop. Because isn't that the argument you're going to make to the state court? That's exactly right. And so what I'll do is- What is your claim about federal jurisdiction, which is, I think, the only thing that's in front of us right now. Well, and that's right. So there's one more thing that they brought up as a basis for federal jurisdiction. That's the coercive suit doctrine. And the coercive suit applies when you have the plaintiff having filed a declaratory judgment action under state law. And the question is, what would the coercive suit that the defendant could have filed had the plaintiff not filed a declaratory judgment action? Well, the mirror image of our suit would be a suit by Appalachian Power Company saying, you're violating our easement rights, which is a state court claim. Now, what they argue and what they have done in these district court cases, some of which are unpublished, is create federal jurisdiction by claiming that, one, there's a cause of action, two, jurisdiction under the Federal Power Act, 16 U.S.C. 825P. That whole argument confuses the exclusivity of jurisdiction with the generator of jurisdiction. All 825P does is say, when there's a case involving these matters, for which federal courts have jurisdiction, that jurisdiction will be exclusive. It doesn't create any jurisdiction whatsoever. It doesn't create a cause of action. So the use of 825P is either a cause of action or as a basis to jurisdiction is not proper. And I would cite to the case of Columbia Gas v. Singh, which is out of the Sixth Circuit in 2013. It wasn't a Federal Power Act case. It was a Natural Gas Act case. But those are very similar statutory schemes. And there is, I think it's 15 U.S.C. 717U, is almost word for word with 825P. And in that case, Columbia Gas alleged that there was jurisdictions, or it was a jurisdictional case. The dispute was whether there was jurisdiction when the parties agreed about the scope of a natural gas easement. Kind of like the disagreement in the Columbia Gas v. Strain case. And Columbia Gas, in the Singh case, filed suit to enjoin the certain activities that they alleged could lead to violations of their duties, Columbia Gas's duties, under the Natural Gas Act and other federal laws applying to transportation and natural gas. The Sixth Circuit said, no, you're confusing. And as the basis for their jurisdiction, Columbia Gas cited to 15 U.S.C. 717U. And the Sixth Circuit said, that does not create a cause of action. They have another basis for federal jurisdiction. I'm sorry? There was another basis. Maybe you want to address that. In the Singh case? No. 18 U.S.C. 1331. That's another basis the district court found here, right? I'm not sure that that's the case. Saying that there was a cause of action on the face of the complaint? Federal cause of action on the face of the complaint? 131. You don't remember that? The district court in our case or in the Singh case? Yes, indeed. The court in our case found jurisdiction based on the coercive suit doctrine. And I'm not sure that they found it. That's the federal statute. And there were two statutes that the district court relied on. This is the second one. The ordinary 1331. It said there was a federal question. Never mind. That's all right. Well, no. They said that there was a federal question. But they said that federal question arose because of the coercive suit. Not because of the Power Act, which is the first thing that you were talking to us about. 825P. Remember? Yes. In addition to that. And even if you're right on that. Yes. Okay. It's all right. I apologize, Your Honor. But I would just conclude by saying that this is a property rights case. It is a question of whether the flowage easement in this case grants the Appalachian Power the authority that it asserts. Just because there's this federal flavor lurking in the background, it does not create federal jurisdiction. For that reason, we would ask the court to vacate the order of the district court, remand the case back to the district court so that it can be remanded to the state court. Thank you.
judges: Diana Gribbon Motz, William B. Traxler Jr., Henry F. Floyd